# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER SCOTT MERRILL,

Defendant-Appellant.

UNPUBLISHED
November 20, 2018

No. 339874
St. Clair Circuit Court
LC No. 17-000547-FC

Before: M. J. KELLY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant, Christopher Merrill, appeals as of right his jury trial convictions of third-degree criminal sexual conduct, MCL 750.520d(1)(b), and fourth-degree criminal sexual conduct, MCL 750.520e(1)(b). Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

This case arises out of Merrill's sexual abuse of his niece, CB. CB testified that in the late evening on July 16, 2016, Merrill grabbed her and kissed her when she got to the top of the stairs in her grandmother's house. He then pushed her against the wall and kissed her before putting his hands down her pants and penetrating her vagina with his fingers. She stated that she tried to pull his hands away and asked him repeatedly to stop. Merrill, however, picked her up, put her legs around his waist, and carried her into an empty bedroom. He pushed her to the ground, climbed on top of her, and continued kissing her while digitally penetrating her vagina. CB testified that Merrill also pulled up her shirt and bra, touched her breasts with his hands, and kissed her on her chest above her breasts. She explained that eventually he appeared to hear a noise, so he stopped and they both left the room. He kissed her once more on the second floor of the house, telling her that she was "beautiful" and "better" than her aunt. CB also recounted that Merrill came into her bedroom around 6:00 a.m. the next morning and kissed her again. At trial, Merrill admitted to kissing and tickling CB, but denied reaching under her shirt or digitally penetrating her vagina. He also testified that CB voluntarily wrapped her legs around his waist and went into the empty bedroom with him. The jury rejected Merrill's version of events and convicted him as indicated above.

-1-

## II. 404(B) EVIDENCE

### A. STANDARD OF REVIEW

Pursuant to MRE 404(b), the prosecution introduced testimony from AR, another of Merrill's nieces. However, contrary to her statement in the police report, AR testified that she was unable to determine whether Merrill had sexually abused her or whether she had just dreamed that the incident had occurred. As a result, the trial court struck AR's testimony from the record. On appeal, Merrill argues that the trial court should have granted his request for a mistrial based on AR's testimony, or, in the alternative, the prosecutor committed misconduct by soliciting the testimony despite knowing that AR thought she had dreamed the incident. This Court reviews de novo whether prosecutorial misconduct denied defendant "a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). A trial court's denial of a motion for mistrial is reviewed for an abuse of discretion, which "occurs when the trial court chooses an outcome that is outside the range of principled outcomes." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017).

### B. ANALYSIS

"[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Bennett*, 290 Mich App at 475. "[P]rosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Solloway*, 316 Mich App 174, 203; 891 NW2d 255 (2016). Here, Merrill asserts that the prosecutor committed misconduct by failing to request a proffer of AR's testimony outside the presence of the jury. The record, however, reflects that on the first day of trial, the prosecutor asked the court whether it would "like to hear some proffered testimony from the potential MRE 404(b) witness" or whether the court felt comfortable with the police report attached to the prosecution's notice of intent to introduce other-acts evidence. The prosecutor added that he believed AR's testimony would be fairly consistent with the police report. The court stated that it had reviewed the attached police report and declined to hear any testimony at that time. The next morning, Merrill's lawyer and the prosecutor presented their arguments regarding the admissibility of AR's testimony. At that time, the prosecutor again offered to have AR testify outside the presence of the jury, reiterating that he believed her testimony would be very consistent with the police report. Ultimately, the court held that AR's testimony was admissible under MRE 404(b), and noted that it would give the jury a limiting instruction on how the jury could use the evidence. Accordingly, on this record it is plain that the prosecutor did, in fact, offer to present AR's testimony outside the jury's presence.

Additionally, there is nothing in the record suggesting that the prosecutor knew or should have known that AR would testify that the alleged abuse had possibly just occurred in a dream. The prosecutor recounted that a week before the trial, AR gave him a "very detailed statement" about the incident, and he stated multiple times that he believed she would testify consistently

with the police report.[1]  Therefore, on this record, Merrill's claim of prosecutorial misconduct is without merit.

Merrill also contends that the trial court abused its discretion by declining to grant him a mistrial premised on AR's stricken testimony.  A trial court can only grant a mistrial for "an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *Dickinson*, 321 Mich App at 18.  A mistrial must be the only way to remove the prejudicial effect.  *Id*.  Here, a mistrial was not the only way to remove the prejudicial effect of AR's testimony.  The trial court struck AR's testimony from the record after it became clear that she could not determine whether she had dreamed the incident or whether it had actually occurred.  Thereafter, the court instructed the jury that it could only consider evidence that was admitted at trial, and the court specifically instructed the jury that it could not consider any testimony that was stricken.  "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

Merrill attempts to overcome those presumptions by pointing out that the jury only deliberated for a short time.  However, AR's testimony, unlike her statements in the police report, had limited probative value.  She testified that she believed something happened between Merrill and herself in her bedroom, but she noted that she "couldn't remember what happened if it was a dream or if it actually happened."  When asked if Merrill ever touched her, she stated, "[n]ot necessarily," adding that she was not 100 percent sure if Merrill ever touched her while she was lying in bed because she believed that "was part of a dream or maybe it actually happened."  In sum, before AR's testimony was stricken, the jury only heard that something may or may not have happened involving touching between Merrill and AR in AR's bed.  Thus, contrary to Merrill's contentions on appeal, her testimony was not highly prejudicial so as to improperly inflame the jury.  Thus, Merrill has not overcome the presumption that the jury followed the instruction not to consider AR's stricken testimony, and the trial court did not abuse its discretion by denying the request for a mistrial.

Affirmed.

/s/ Michael J. Kelly
/s/ David H. Sawyer
/s/ Jane E. Markey

---

[1] The police report included a statement from AR's grandmother.  In that statement, AR's grandmother indicated that AR had told her that the incident might have been the result of a dream.  However, nothing in the record suggests that AR ever made a statement of that nature to the police or to the prosecution.